CLIFTON TURNER, Plaintiff-Appellant, v. ANGELO CAMPAGNA, Director of the Elgin Mental Health Center, *et al.*, Defendants-Appellees.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLIFTON TURNER, Defendant-Appellant.

First District (5th Division)   Nos. 1—94—3563, 1—95—0820 cons.

Opinion filed June 21, 1996.

Mark J. Heyrman, of Edwin F. Mandel Legal Aid Clinic, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Peter Fischer, and Janet Powers Doyle, Assistant State's Attorneys, of counsel), for the People.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Arleen C. Anderson and Steven R. Splitt, Assistant Attorneys General, of counsel), for appellees Angelo Campagna and Lynn Handy.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

In this case we must determine the consequences of an admitted violation of the Unified Code of Corrections (Ill. Rev. Stat. 1987, ch. 38, par. 1001—1—1 *et seq.*). Clifton Turner shot and killed his mother and his stepfather on June 3, 1987. After finding Turner not guilty by reason of insanity in December 1988, the trial court committed Turner to the custody of the Department of Mental Health and Developmental Disabilities (the Department) without holding a hearing concerning his mental condition at the time of commitment.

In June 1994, while he was housed in the Elgin Mental Health Center, Turner petitioned for a writ of *habeas corpus* ordering Angelo Campagna, director of the Elgin Mental Health Center, and Lynn Handy, Acting Director of the Department, to release him from

custody. The trial court denied the petition for *habeas corpus* by order dated September 14, 1994. Turner appeals from denial of his petition in docket No. 1—94—3563.

The criminal court held the commitment hearing on January 25, 1995, more than six years after the acquittal. The court committed Turner to the custody of the Department for 40 years, with credit for the years already spent in custody. Turner appeals from that order in docket No. 1—95—0820. We consolidated the appeals.

■ Section 5—2—4(a) of the Unified Code of Corrections requires the Department to report its evaluation of each insanity acquittee within 30 days of the acquittee's initial commitment to the Department. Ill. Rev. Stat. 1987, ch. 38, par. 1005—2—4(a). The Department admits that it never submitted the evaluation of Turner. The trial court never held the commitment hearing required by section 5—2—4(a) until Turner filed his *habeas corpus* petition.

■ By denying the petition and holding the criminal commitment hearing six years after the acquittal, the trial court effectively found Turner entitled to no relief due to the delay. The Department suggests that Turner could sue for damages resulting from the procedural violation. To recover any compensatory damages for a violation of due process, "the plaintiff must show that the underlying deprivation would not have occurred if due process had been accorded." *Superdawg Drive-In, Inc. v. City of Chicago*, 162 Ill. App. 3d 860, 864, 516 N.E.2d 272 (1987). Thus, to recover more than nominal damages, Turner would have the burden of proving that he would not have been committed if the court had held the commitment hearing within the statutory time limits. *Superdawg*, 162 Ill. App. 3d at 864-65; see *Katris v. City of Waukegan*, 498 F. Supp. 48, 54 (N.D. Ill. 1980). Since Turner lacked the wisdom and foresight to preserve evidence concerning his condition in January 1989, the relief is illusory. Only Turner, and not the criminal court or the Department, would suffer adverse consequences from the unexcused failure of the Department and the court to comply with the Unified Code of Corrections.

The Code makes no express provision for the consequences of the Department's failure to submit the evaluation or the court's failure to hold the hearing in a timely manner. The parties have not directed our attention to any case addressing the issues presented here. This case appears to be one of first impression in Illinois.

■ The Department invites us to determine the consequence of the statutory violation here by balancing the harm from granting the writ of *habeas corpus* against the harm from denying the writ. See *Mathews v. Eldridge*, 424 U.S. 319, 334-35, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 902-03 (1976). Section 5—2—4 authorizes commitment fol-

lowing an insanity acquittal " 'to treat the individual's mental illness, and at the same time protect him and society from his potential dangerousness.' " *People v. Pastewski*, 164 Ill. 2d 189, 197, 647 N.E.2d 278 (1995), quoting *People v. Williams*, 140 Ill. App. 3d 216, 228, 488 N.E.2d 649 (1986).

> "The primary objective of section 5—2—4 is to insure that insanity acquittees are not indeterminately institutionalized while at the same time protecting society from the premature release of mentally ill persons who have been proved capable of dangerous acts." *People v. Winston*, 191 Ill. App. 3d 948, 959, 548 N.E.2d 406 (1989).

This purpose is consistent with the overall purpose of the Code, which is designed to protect society from future criminal conduct by past offenders (730 ILCS 5/1—1—2(b) (West 1994)), prevent arbitrary or oppressive deprivations of the liberties of offenders (730 ILCS 5/1—1—2(c) (West 1994)), and restore offenders to useful citizenship (730 ILCS 5/1—1—2(d) (West 1994)).

■ Persons found not guilty of crimes by reason of insanity retain substantial liberty interests protected by the procedures mandated by section 5—2—4. *Radazewski v. Cawley*, 159 Ill. 2d 372, 378, 639 N.E.2d 141 (1994). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80, 118 L. Ed. 2d 437, 448, 112 S. Ct. 1780, 1785 (1992). Even for persons mentally ill and dangerous, "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Jones v. United States*, 463 U.S. 354, 361, 77 L. Ed. 2d 694, 703, 103 S. Ct. 3043, 3048 (1983). The due process clauses of both the federal and state constitutions require compliance with the procedures mandated by statute. *Department of Transportation ex rel. People v. Parr*, 259 Ill. App. 3d 602, 607, 633 N.E.2d 19 (1994); *People v. Cowherd*, 114 Ill. App. 3d 894, 900, 449 N.E.2d 589 (1983).

If egregious, unexcused violations of the procedural protections in section 5—2—4 incur no redress, the Department and the criminal courts will have no impetus for holding the mandatory hearings within any reasonable time. The lack of consequences would severely undercut the statutory objectives of preventing indeterminate institutionalizations and arbitrary deprivations of liberty. If the statute provides no protection for the right to a timely hearing, the constitutionality of the statutory scheme becomes questionable, because the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *People v. P.H.*, 145 Ill. 2d 209, 235, 582 N.E.2d 700 (1991).

Courts must, if possible, avoid interpreting statutes in a manner that raises substantial questions concerning their constitutional validity. *People v. Williams*, 119 Ill. 2d 24, 27-28, 518 N.E.2d 136 (1987); *Pritz v. Chesnul*, 106 Ill. App. 3d 969, 974, 436 N.E.2d 631 (1982).

On the other hand, if we interpret the statute to provide an effective remedy for procedural violations, and therefore we grant Turner's petition for *habeas corpus*, the State would not be able to seek his criminal commitment under section 5—2—4 of the Unified Code of Corrections. Instead, the State could petition for only his civil commitment under the Mental Health and Developmental Disabilities Code (the Mental Health Code) (405 ILCS 5/1—100 *et seq.* (West 1994)).

■ Like section 5—2—4 of the Unified Code of Corrections, the Mental Health Code permits the court to hospitalize a person against his will if that person is mentally ill and dangerous. 405 ILCS 5/3—700, 1—119(1) (West 1994). Procedures under the two codes are similar (see 730 ILCS 5/5—2—4(a) (West 1994)), but the legislature fashioned a lesser burden of proof for commitment following insanity acquittals than for civil commitments. For civil commitment the court must find the respondent mentally ill, but an insanity acquittee may be committed even if his condition does not qualify as a mental illness, as long as he "would benefit from inpatient care" (730 ILCS 5/5—2—4(a)(1)(B) (West 1994)). An insanity acquittee may be committed if the court reasonably expects him to inflict serious physical harm at some time in the future (730 ILCS 5/5—2—4(a)(1)(B) (West 1994)); see *People v. Gamble*, 117 Ill. App. 3d 543, 453 N.E.2d 839 (1983)), but the court will civilly commit the respondent only if he is expected to inflict harm in the near future (405 ILCS 5/1—119(1), 3—700 (West 1994)).

The Unified Code of Corrections also shifts responsibility for release decisions to the criminal courts, while mental health professionals retain greater responsibility for decisions regarding release of persons civilly committed. See R. Loverude, *The New Illinois Provisions for Defendants Found Not Guilty by Reason of Insanity*, 68 Ill. B.J. 528, 528 (1980). If the facility director recommends discharge following a civil commitment, the director must notify the court that committed him, but the patient may then be discharged without further proceedings if no one challenges the discharge. 405 ILCS 5/3—902(b), (c) (West 1994). Following a criminal commitment, when the director recommends discharge the criminal court must hold a hearing, at which the State has the opportunity to prove by clear and convincing evidence that the acquittee needs further mental health services. 730 ILCS 5/5—2—4(d), (g) (West 1994); *People v. Nelson*, 244

Ill. App. 3d 356, 363, 614 N.E.2d 277 (1993). An insanity acquittee who petitions for discharge against his doctors' recommendations must establish by clear and convincing evidence that he no longer needs mental health services, while a patient civilly committed may petition for discharge, and any party opposing discharge has the burden of proving that he remains mentally ill and dangerous. 405 ILCS 5/3—901, 3—808; 730 ILCS 5/5—2—4(e), (g), (h) (West 1994). If the prosecutor believes any civilly committed patient remains mentally ill and dangerous despite the patient's petition or the facility director's release recommendation, the State always retains the right to challenge the petition and force a court hearing prior to release.

Thus, although both civil commitment and criminal commitment provide society protection against individuals who suffer mental disorders making them dangerous, the legislature has tilted the balance to more heavily favor commitment of persons found not guilty of crimes by reason of insanity. As long as the State has sufficient evidence that a person is mentally ill and expected to inflict harm on himself or others in the near future, civil commitment provides essentially the same protections as commitment under section 5—2—4. The special standards for criminal commitments make a difference for initial commitment only if the State can prove the respondent needs mental health services, but the State cannot prove the respondent mentally ill, and if the State can prove the respondent is likely to inflict harm, but not that he is likely to inflict harm in the near future. Similarly, the different standards for release make a difference in the duration of commitment only if the State is unable to present clear and convincing evidence that the patient remains subject to involuntary commitment, but the State is able to meet the standards of proof for continuing commitment under section 5—2—4.

If the unexcused delay here provides grounds for granting Turner's petition for *habeas corpus*, society must rely on the protections of civil commitment rather than the special standards for criminal commitment. If the unexcused delay is not grounds for *habeas corpus*, society loses protection for its interest in speedy resolution of commitments of insanity acquittees and in avoiding arbitrary deprivations of their liberties. Appellate courts have faced the need to balance similar interests in timely dispositions of cases against the need for protection from proven wrongdoers when trial courts have long delayed impositions of sentence or hearings on petitions to revoke probation. See *People ex rel. Houston v. Frye*, 35 Ill. 2d 591, 593, 221 N.E.2d 287 (1966); *People v. White*, 273 Ill. App. 3d 638, 653 N.E.2d 426 (1995). Although no statute prescribes consequences for

either kind of delay, both can be grounds for outright release of convicted criminals.

■ Illinois courts have uniformly held that when the trial court permits an unreasonable time to pass, without acceptable excuse, prior to imposition of sentence, the court must release the offender without imposing any sentence. Thus, in *People ex rel. Boenert v. Barrett*, 202 Ill. 287, 298, 67 N.E. 23 (1903), the trial court lost jurisdiction to sentence the defendant convicted of a crime, because the court unreasonably failed to rule on defendant's motion for a new trial for 29 months. Our supreme court granted the defendant's petition for writ of *habeas corpus*. *Barrett*, 202 Ill. at 300. Similarly, in *People v. Jones*, 4 Ill. App. 3d 907, 909, 282 N.E.2d 248 (1972), the trial court lost jurisdiction when it gave no reasonable explanation for a delay of 32 months between conviction and sentencing. See also *People v. Murdock*, 50 Ill. App. 3d 198, 207, 365 N.E.2d 1301 (1977). As the court said in *Frye*, 35 Ill. 2d at 593:

"[P]ost-trial activity, including the imposition of sentence, may not be indefinitely postponed, for public policy and the effective enforcement of the criminal law require reasonable promptness in those areas of its administration where specific time limitations are not imposed. Whether a given period of delay is so unreasonable as to deprive a court of its authority to proceed is dependent in substantial measure upon the circumstances."

Unreasonable delays in probation revocation proceedings also require dismissal of the charges, with no punishment of the offender or protection of society from further wrongdoing by one who has committed a crime. In *White*, 273 Ill. App. 3d at 643-44, the appellate court found that an unexcused four-year delay between the filing of a petition for probation revocation and commencement of proceedings on the petition violated the defendant's right to due process and required dismissal of the charges. See also *People v. Powell*, 89 Ill. App. 3d 801, 412 N.E.2d 47 (1980) (15-month delay); *People v. Crawford*, 85 Ill. App. 3d 366, 406 N.E.2d 861 (1980) (17-month delay).

■ Here, neither the prosecutor nor the trial court has offered any excuse for the delay of more than 72 months between the judgment finding Turner not guilty by reason of insanity and the commitment hearing. We note that the legislature has not found convicted criminals less dangerous than those found not guilty of crimes by reason of insanity. With respect to convicted criminals, society has an interest in punishment as well as its protection and the restoration of the offender to useful citizenship. 730 ILCS 5/1—1—2 (West 1994). The interest of society with respect to insanity acquittees is not in punishment but only in protection and restoration. *Pastewski*,

164 Ill. 2d at 196-97. Thus, the legislature has seen fit to enact mandatory sentences for many crimes, which must be served without further inquiry into the dangerousness of the criminal, while allowing insanity acquittees to earn release whenever the Department's facility director recommends release, unless the State proves the acquittees remain dangerous. Compare 730 ILCS 5/5—2—4(g), (h) (West 1994), with 730 ILCS 5/5—8—1 (West 1994).

If society's interest in protection and punishment cannot permit sentencing a convicted criminal after an unexplained delay of less than two years, society's more narrow interests in protection against, and not punishment of, those not guilty of crimes cannot permit the court to delay six years before holding the special commitment proceedings for insanity acquittees. Although we express no opinion on cases not before us, we note that this would be a very different case if the delay beyond the statutory period had been minimal or if the State had offered an adequate excuse for the delay. We hold that the unexcused lengthy delay before holding the hearing required by section 5—2—4 of the Unified Code of Corrections constitutes an omission that took place after the initial lawful confinement, and therefore the trial court should have granted Turner's petition for writ of *habeas corpus*. 735 ILCS 5/10—124(2) (West 1994); see *People ex rel. DeMario v. Twomey*, 27 Ill. App. 3d 103, 326 N.E.2d 513 (1975) (abstract of op.).

Like the court in *In re Commitment of Coppersmith*, 108 Ill. App. 3d 161, 164, 438 N.E.2d 1267 (1982), we, too, "conclude that respondent is entitled to his immediate release unless his civil commitment is sought." However, in order to provide the State an opportunity to pursue civil commitment, we stay our mandate for 45 days.

No. 1—94—3563, Reversed.
No. 1—95—0820, Vacated.

GORDON and HOURIHANE, JJ., concur.