FIFTH DIVISION
June 23, 2006

No. 1-03-2485

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 25349 |
| | ) | |
| DAVID GARIANO, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE O'BRIEN delivered the opinion of the court:

Defendant, David Gariano, appeals his bench trial conviction on five counts of indecent solicitation of a child to commit aggravated criminal sexual abuse and his sentence of two years of felony probation, sex offender counseling, DNA testing, HIV testing, and sex offender registration. Defendant contends the trial court erred in denying his motion to suppress instant messages intercepted and transcribed by the police without his consent or a court order and admitting them into evidence with a statement made to an assistant State's Attorney. We affirm.

At the hearing on the motion to suppress, Investigator Daniel K. Everett of the Chicago police department testified that in September 2001 he was assigned to the special investigations unit of the Youth Division (Unit) where he investigated crimes against children committed over the Internet. He created a "profile," a personal history associated with an AOL screen name that includes information such as gender, marital status, hobbies, and location, and used the "screen name" BrianNl18. Nothing in Everett's "profile" indicated BrianN118's age. Everett testified that he was posing as an underage teenage boy under the screen name BrianN118.

Everett testified he monitored AOL chat rooms daily, entered the chat room to see who else

was in the chat room, and waited to see if he was contacted by anyone using AOL's instant messaging

The Unit supplied Everett with "power tools," a computer software program that enabled him to record, save, and print verbatim the words transmitted by defendant to Everett while using AOL's instant messaging. Everett testified that power tools transcribed instant messages on an immediate basis, similar to a court reporter.

AOL instant messaging is a private, one-on-one, in-time, electronic conversation between the sender and receiver, like a telephone call. Only the sender and receiver have access to instant messages.

On September 5, 2001, and September 6, 11, 17, 18, 19 and 21, 2001, Everett corresponded with defendant using instant messages. Everett activated the power tools program to automatically transcribe all of their messages. Defendant's AOL screen names were "Clncutexec" and "Ddgariano." Everett testified that he did not obtain defendant's consent to transcribe the instant messages. Everett used power tools to transcribe 23 pages of instant message conversations he had with defendant during these seven days.

On cross-examination, Everett testified that he never intended that his instant message communications with defendant would be private.

Defendant next called Jerry Saperstein, an expert in computer forensics and AOL protocols, as his witness. Saperstein testified, *inter alia,* to the four different methods of communication on AOL and testified that only a third party, like a hacker, deliberately attempting to intercept an instant message would be privy to the text in instant messages.

Saperstein concluded his testimony by testifying that instant messaging is one-on-one, real-time, private communication across a network. Instant messaging is a specific protocol that can only involve two people.

The trial court denied defendant's motion to suppress.

At the bench trial, the State called two witnesses.

The first witness, Assistant State's Attorney Carol Rogala (ASA Rogala), testified that on September 24, 2001, prior to interviewing defendant, she discussed the case with Everett and reviewed the instant message transcripts. ASA Rogala then read defendant his Miranda rights, which defendant waived. Defendant told ASA Rogala his age and home address. Defendant also told ASA Rogala that he had been communicating online with BrianN118, whom he believed to be a 15-year-old boy, since September 5, 2001. Defendant told ASA Rogala that he used two screen names, Clncutexec and Ddgariano, during his instant message communications with BrianN118. ASA Rogala testified that defendant told her that he instant messaged BrianN118 about having sex with males and that they exchanged digital photos of themselves

ASA Rogala testified that she showed defendant the transcripts of the instant messages with BrainN118. According to ASA Rogala, defendant reviewed the transcripts and told her that the transcripts were accurate logs of the instant messages. ASA Rogala showed defendant the September 5, 2001, transcripts where defendant used explicit terms and defendant explained their sexual meaning. Defendant explained that he and BrianN118 discussed sex, meeting each other, and going to defendant's apartment to have sex. On September 21, 2001, defendant and BrianN118 confirmed that they would meet on September 24. Defendant told ASA Rogala that before noon on

September 24, 2001, he and BrianN118 spoke by phone and confirmed that they would meet at a bus stop at Illinois and State Streets, and they discussed the clothing that each man would be wearing.

ASA Rogala testified that defendant told her that he planned to have lunch with BrianN118 and then they planned to go to defendant's apartment to have sex as they had previously discussed. Defendant told ASA Rogala that on September 24, 2001, at approximately 2:15 p.m., he went to the designated bus stop to meet BrianN118 and was arrested.

Defendant declined to sign the statement at the end of the interview.

The second trial witness, Everett, testified to substantially the same facts that he provided at the suppression hearing. He explained that he was online in his official undercover capacity, monitoring chat rooms on AOL in search of child predators and child pornography offenders. Using his screen name, BrianN118, Everett posed as a 15-year-old boy. Everett used both AOL and power tools.

On September 5, 2001, while on the internet in an AOL chat room as BrianN118, Everett was contacted through instant messaging, by defendant, under defendant's screen name, Clncutexec.

Thereafter, on September 6, 11, 17, 18, 19 and 21, 2001, Everett, as BrianN118, had several instant message conversations with defendant, under either his Clncutexec or Ddgariano screen names. The parties discussed sex during the instant message conversations, and Everett retained all of defendant's instant messages by activating his power tools software. Everett testified that defendant did not consent to this procedure, and Everett never obtained a search warrant to transcribe the instant messages. The parties also exchanged digital pictures of each other -- Everett transmitted an image of another Chicago police officer when he was much younger.

No. 1-03-2485

Everett testified that on September 21, 2001, he and defendant agreed by instant message to meet at the corner of Illinois and State Streets on September 24, 2001, and to go to defendant's apartment to engage in sex. Defendant gave BrianN118 his telephone number, and on September 24, 2001, one of Everett's fellow officers spoke with defendant by phone, and the parties made the final meeting arrangements and discussed the clothing that each man would be wearing. Police officers observed defendant waiting at the prearranged meeting location, wearing the clothing he described on the telephone, and arrested him.

The instant message transcripts were read into the record, and the State rested.

The trial court found defendant guilty of all five counts of indecent solicitation of a child to commit aggravated criminal sexual abuse. The trial court sentenced defendant to two years' felony probation, sex offender counseling, DNA testing, HIV testing, and sex offender registration.

Defendant contends the trial court erred when it denied his motion to suppress the transcriptions of the instant messages, which were transcribed without his consent or a court order.

As the relevant facts are not in dispute, our review is *de novo*. People v. Parker, 354 Ill. App. 3d 40, 44 (2004).

First, defendant contends that the action of Everett violated both the fourth amendment of the United States Constitution (U.S. Const., amend IV) and article 1, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, § 6) and cites Katz v. United States, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967), in support.

A more recent Supreme Court case, United States v. White, 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122 (1971, is dispositive. In White, the United States Supreme Court held:

"[A] police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights. [Citation.] For constitutional purposes, no different result is required if the agent instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person [citation]; (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency. [Citation.] If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks." United States v. White, 401 U.S. at 751, 28 L. Ed. 2d at 458, 91 S. Ct. at 1125-26.

Our Illinois Supreme Court has held that "State and Federal constitutional protections against the invasion of privacy are not offended where one party to a conversation allows another party to listen." People v. Shinkle, 128 Ill. 2d. 480, 486 (1989).

Thus, defendant's claims of error as to the United States Constitution and the Illinois Constitution are without merit.

Next, defendant contends that the instant message transcriptions were obtained in violation of the Illinois Criminal Code of 1961 (the eavesdropping statute) as amended on January 1, 2000.

No. 1-03-2485

Section 14-2(a) (1) of the eavesdropping statute states:

"(a) A person commits eavesdropping when he:

(1) Knowingly and intentionally uses an eavesdropping device for the purpose

of hearing or recording all or any part of any conversation or intercepts, retains, or transcribes electronic communication unless he does so (A) with the consent of all of the parties to such conversation or electronic communication or (B) in accordance with Article 108A or Article 108B of the 'Code of Criminal Procedure of 1963', approved August 14, 1963, as amended[.]" (Emphasis added.) 720 ILCS 5/14-2(a)(1) (West 2000).

Section 14-1(e) of the eavesdropping statute defines "electronic communication" as follows:

"[T]he term electronic communication means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or part by a wire, radio, pager, computer, electromagnetic, photo electronic or photo optical system, where the sending and receiving parties intend the electronic communication to be private and the interception, recording, or transcription of the electronic communication is accomplished by a device in a surreptitious manner contrary to the provisions of this Article." (Emphasis added.) 720 ILCS 5/14-1(e) (West 2000).

Defendant contends that Everett was an eavesdropper according to the statute, that he used an eavesdropping device, and that his instant messages to Everett are electronic communications. The State argues that Everett did not intend that his communications with defendant would remain

private and, therefore, there was no electronic communication as defined by the statute and thus, no violation of the eavesdropping statute. The State is correct.

The primary objective of statutory interpretation is to determine and give effect to the legislature's intent. People v. Hanna, 207 Ill. 2d 486, 497 (2003). This inquiry properly begins by examining the language in the statute at issue. People v. Phelps, 211 Ill. 2d 1, 15 (2004). The statute should be interpreted according to the plain and ordinary meaning of the language. Paris v. Feder, 179 Ill. 2d 173, 177 (1997).

The General Assembly chose its terms and definitions. Here, an electronic communication is defined as a communication "where the sending and receiving parties intend the electronic communication to be private." (Emphasis added.) 720 ILCS 5/14-1(e) (West 2000). Everett testified that he had no intention of keeping the conversations private; thus, the conversations were not electronic communications according to the statute, notwithstanding our cultural use of such term. Because they were not electronic communications, the claim of error of defendant is without merit.

Defendant claims that the transcriptions and his statement to ASA Rogala should be suppressed as "the fruit of the poisonous tree." Because of our findings supra, that claim of error is without merit.

Accordingly, the trial court did not err in denying defendant's motion to suppress.

Affirmed.

O'MARA FROSSARD, J., concurs. NEVILLE, J., dissents.

No. 1-03-2485

JUSTICE NEVILLE, dissenting:

I respectfully dissent because I do not believe that the Illinois eavesdropping statute authorizes police officers to use eavesdropping devices to intercept electronic communications without a court order. See 720 ILCS 5/14-1 *et seq.* (West 2000). The majority does not reach this issue in its opinion. Instead, the majority explains the reasons for its decision as follows:

> "The General Assembly chose its terms and definitions. Here, an electronic communication is defined as a communication where the sending <u>and</u> receiving parties intend the electronic communication to be private. (Emphasis added.) 720 ILCS 5/14-1(e) (West 2000). Everett testified that he had no intention of keeping the conversations private; thus, the conversations were not electronic communications according to the statute, notwithstanding our cultural use of such term. Because they were not electronic communications, the claim of error of defendant is without merit.
>
> Defendant claims that the transcriptions and his statement to ASA Rogala should be suppressed as 'the fruit of the poisonous tree.' Because of our finding *supra*, that claim of error is without merit." Slip op. at 8.

The eavesdropping statute provides that a person commits eavesdropping when he:

> "Knowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or  intercepts,

˅9˅

No. 1-03-2485

retains, or transcribes electronic communication *unless he does so (A) with the consent of all the parties to such* conversation or electronic communication or (B) in accordance with Article 108A or Article 108B of the 'Code of Criminal Procedure of 1963[.]' " (Emphasis added.) 720 ILCS 5/14-2(a) (West 2000).

The majority's opinion fails to discuss the definition for an eavesdropping device and fails to determine whether Investigator Everett's computer, which had Power Tools software installed on its hard drive, was an eavesdropping device. See 720 ILCS 5/14-1(a) (West 2000). In addition, the majority's opinion fails to discuss the definition for eavesdropper to determine whether police officers conducting undercover investigations, like Investigator Everett, can be eavesdroppers. See 720 ILCS 5/14-1(b) (West 2000). Finally, and most importantly, the majority fails to discuss whether Investigator Everett's Power Tools programmed computer, which downloaded Gariano's instant messages, was an eavesdropping device used in accordance with Article 108A or Article 108B of the Code of Criminal Procedure of 1963. In my opinion, it cannot be determined whether the trial court erred when it denied Gariano's motion to suppress without considering the aforementioned definitions and the ultimate question of whether an eavesdropping device was used by Investigator Everett contrary to the provisions of Illinois law.

The Definition for Eavesdropping Device

The facts establish that Investigator Everett's police unit supplied him with Power Tools, a software program. The facts also establish that Investigator Everett downloaded the Power Tools program to the hard drive on his computer so he could record, save, and print verbatim the words or

instant messages that Gariano transmitted to him. The majority's opinion failed to address the question of whether the police department's Power Tools programmed computer that Investigator Everett used to intercept, retain and transcribe Gariano's instant messages was an eavesdropping device. An eavesdropping device is defined as follows:

> "any device capable of being used to hear or record oral conversation or *intercept, retain, or transcribe electronic communications whether such conversation or electronic communication* is conducted in person, by telephone, or by any other means; Provided, however, that this definition shall not include devices used for the restoration of the deaf or hard-of-hearing to normal or partial hearing." (Emphasis added.) 720 ILCS 5/14-1(a) (West 2000).

The definition for eavesdropping device requires an answer to two questions: (1) whether Investigator Everett's Power Tools programmed computer was a device, and (2) if the Power Tools programmed computer was a device, whether the computer with the Power Tools program installed on its hard drive was capable of being used to intercept, retain, or transcribe Gariano's instant messages. See 720 ILCS 5/14-1(a) (West 2000).

The facts establish (1) that Investigator Everett's unit supplied the officer with the Power Tools program which was installed on his computer, and (2) that the Power Tools program was not equipment or software that was an integral part of Investigator Everett's computer but was a software program that was added or installed on Investigator Everett's computer to enable him to record, save

No. 1-03-2485

and transcribe Gariano's AOL instant messages.[1]  Therefore, I believe that Investigator Everett's police department computer became a device once the Power Tools program was installed on the computer.

Next, it must be determined whether Investigator Everett's computer with the Power Tools program installed on its hard drive was used to intercept, retain, and transcribe Gariano's instant messages.  Investigator Everett testified that he used the Power Tools program to record, save, and print the instant messages that Gariano transmitted to him.  More importantly, the State introduced Investigator Everett's logs from Gariano's instant messages into evidence.  Therefore, given the aforementioned facts, I believe that this court would have to find that Investigator Everett's Power Tools programed computer was used to intercept, retain, and transcribe Gariano's instant messages.  Finally, the facts establish that Investigator Everett and Gariano did not conduct their conversations

---

[1]Compare Deal v. Spears, 980 F.2d 1153, 1157-58 (8th Cir. 1992) (finding that the recording device was purchased from a store, it was not part of the telephone because it was not provided by the telephone company) with James v. Newspaper Agency Corp., 591 F. 2d 579, 581 (10th Cir. 1979) (the telephone monitoring system was provided by the telephone company at the request of the company for business purposes); see also I. David, *Privacy Concerns Regarding the Monitoring of Instant Messaging in the Workplace: Is It Big Brother or Just Business?*, 5 Nev. L.J. 319, 342 (2004).

in person or by telephone, but by other means, in this case by computer-generated instant messages.

Consequently, I believe that Investigator Everett's computer became an eavesdropping device once

the Power Tools program was installed on the computer.

The Definition for Eavesdropper

Next, in order to answer the question presented in this case, I believe it must **be** determined

whether Investigator Everett was an eavesdropper. Section 14-1(b) of the eavesdropping statute

defines an eavesdropper as follows:

> "An eavesdropper is any person, *including law enforcement officers*, *** who operates or
>
> participates in the operation of any eavesdropping device contrary to the provisions of this
>
> Article." (Emphasis added.) 720 ILCS 5/14-1(b) (West 2000).

The eavesdropping statute clearly provides that any person, including law enforcement officers like

Investigator Everett, may be an eavesdropper. However, the definition requires this court to

determine whether Investigator Everett (1) operated an eavesdropping device, and (2) whether the

eavesdropping device was operated contrary to the provisions of the eavesdropping statute. See 720

ILCS 5/14-1(b) (West 2000). Investigator Everett testified and admitted that he used his Power

Tools programmed computer to intercept, retain, and transcribe Gariano's instant messages;

therefore, since Investigator Everett's Power Tools programmed computer qualifies as an

eavesdropping device, Investigator Everett can be considered a person who operated an

eavesdropping device.

However, before Investigator Everett can be classified as an eavesdropper, it must be

determined whether the officer's investigation, which was conducted with an eavesdropping device,

˘13˘

was contrary to the provisions of the eavesdropping statute: (1) Was the eavesdropping device used with Gariano's consent (720 ILCS 5/14-2(a)(1)(West 2000))?; or (2) Was the eavesdropping device used in accordance with Article 108A of the Code of Criminal Procedure, which requires a court order authorizing the use of an eavesdropping device (725 ILCS 5/108A-1 (West 2000))? In this case, Investigator Everett testified that he did not obtain Gariano's consent to transcribe their instant messages. Therefore, the "consent of all parties" exception in section 14-2(a) of the eavesdropping statute does not apply in this case. See 720 ILCS 5/14-2(a) (West 2000).

Second, it must be determined whether the court-order exception codified in Articles 108A and 108B of the Code of Criminal Procedure applies in this case. 725 ILCS 5/108A-1 *et seq*., 108B-1 *et seq*. (West 2000). Section 108A-1, the section which prescribes the procedure for obtaining authorization to use eavesdropping devices, provides that the State's Attorney may authorize an application to be submitted to a circuit judge for an order authorizing the use of an eavesdropping device by a law enforcement officer having the responsibility for the investigation of any felony under Illinois law where any one party to a conversation to be monitored has consented to such monitoring. 725 ILCS 5/108A-1 (West 2000). There is no evidence in the record that the State's Attorney of Cook County or one of his assistants authorized an application to be filed with a circuit judge. More importantly, no order was found in the record where a circuit court judge authorized Investigator Everett, a law enforcement officer who consented to his instant messages being intercepted, to use an eavesdropping device, in this case a Power Tools programmed computer, to conduct his undercover investigation of Gariano. It should also be noted that according to sections 108A-1 and 108A-3, a court order is still required to be obtained by a police officer even where one

party to the conversation to be monitored has consented to the use of an eavesdropping device. 725 ILCS 5/108A-1, 108A-3(a)(West 2000). Therefore, according to sections 108A-1 and 108A-3, Investigator Everett's consent to have an eavesdropping device used to download his instant message communications with Gariano did not exempt him from obtaining judicial authorization in the form of a court order to intercept, retain and transcribe Gariano's instant messages. 725 ILCS 5/108A-1, 108A-3 (West 2000).

## The Definition for Electronic Communication

The majority holds that because Investigator Everett had no intention of keeping his conversations with Gariano private, the conversations were not electronic communications and, thus, there was no violation of the eavesdropping statute. I disagree with the majority's holding that Investigator Everett did not violate the eavesdropping statute when he intercepted Gariano's instant messages with his Power Tools programmed computer because "he had no intention of keeping their conversations private." The eavesdropping statute defines an electronic communication as follows:

> "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or part by a wire, radio, pager, computer, electromagnetic, photo electronic or photo optical system, where the sending and receiving parties intend the electronic communication to be private and the interception, recording, or transcription of the electronic communication is accomplished by a device in a surreptitious manner contrary to the

No. 1-03-2485

provisions of this Article."  720 ILCS 5/14-1(e) (West 2000).

While the definition for electronic communication has four elements  (1) a transfer of writings, images, or data, (2) a transfer by wire or computer, (3) the interception or transcription of the electronic communication is done in a surreptitious manner, and (4) the sending and receiving parties intend for the electronic communication to be private (see 720 ILCS 5/14-1(e) (West 2000)), the majority only considered one element:   whether Investigator Everett intended for his communications with Gariano to be private.   My examination of the elements in the definition for electronic communication reveals that Gariano's instant messages were electronic communications.

First, there was a transfer of writings or data because the instant messages[2] that Gariano transmitted to Investigator Everett were the writings and data transcribed in the logs that were admitted into evidence.  Second, there was a transfer by wire or computer based upon Investigator Everett's testimony that he and Gariano communicated, in whole or in part, by instant messaging, *i.e.*, by computer and by wire.  See 720 ILCS 5/14-1(e) (West 2000).  Third, the interception or transcription of Gariano's messages was done in a surreptitious manner for four reasons:  (1) Investigator Everett testified that while online he was in his official, undercover capacity; (2) Investigator Everett also testified that he posed as a 15-year-old boy and used the screen name BrianN118; (3) Investigator Everett further testified that the parties exchanged digital pictures and,

---

[2]  Saperstein defined instant messaging as follows:  (1) a private, one-on-one means of electronic communication; (2) between a maximum of two people acting alternately as sender and receiver; (3) where the electronic communications are not automatically saved to the user's computer hard drive; and (4) where the electronic communications are not retained without deliberate user intervention or by the use of third-party software, like Power Tools.  A Nevada law review article confirms Saperstein's testimony that instant messaging is a relatively new form of electronic communications, conceptually falling between the postal service nature of e-mail and the conversational characterization of a phone call.  5 Nev. L.J. at 321.

rather than transmitting a picture of himself, Investigator Everett transmitted a picture of another Chicago police officer who was much younger; and (4) Gariano asked Investigator Everett if he was a police officer and Investigator Everett denied being a policeman, and in fact stated that he was only 15 years old and that he "hated f[---]ing cops." Therefore, by conducting his investigation in an undercover capacity, posing as a 15-year-old boy, using another officer's picture and a fictitious name, BrianN118, I think that the evidence establishes that Investigator Everett's internet investigation was conducted in a surreptitious manner without a court order.

Finally, using the language in the definition for electronic communication, the majority holds that Investigator Everett's intent not to keep his conversations with Gariano private means that there was no electronic communication and, thus, no violation of the eavesdropping statute. I think that the majority's construction of the intent language in the definition for electronic communication is wrong because the majority's construction of the intent language is inconsistent with and contrary to the legislative history for the eavesdropping statute. People v. Whitney, 188 Ill. 2d 91, 97-98 (1999) (where statutory language is ambiguous, courts may consider extrinsic aids for construction, including legislative history, to resolve ambiguity and determine legislative intent); also see Antunes v. Sookhakitch, 146 Ill. 2d 477, 484 (1992). In 1999, the legislature directly addressed and discussed the intent language in section 14-1(e) of the eavesdropping statute. Representative Fritchey made the following statement:

> "The only change that we made from the time this Bill flew out of the House
> was there was intent language that was put in which was lacking before. And at the
> request of the State Police the *** what they tried to do was avoid intentional over

hears to make it that it was the interception of an electronic communication that is prohibited." 91st Ill. Gen. Assem., House Proceedings, May 19, 1999, at 21 (statements of Representative Fritchey).

Representative Fritchey makes it clear that the intent language was intended to avoid "intentional over hears." I interpret Representative Fritchey to be saying that the intent language removes a police officer from the purview of the eavesdropping statute when he overhears a conversation without the use of an eavesdropping device. Representative Fritchey goes on to say that it was the interception of the electronic communication that is prohibited. By using the word "interception", it is clear that Representative Fritchey was saying that it is still a violation of the eavesdropping statute for a police officer to use an eavesdropping device to intercept an electronic communication. Finally, by separating "intentional over hears" from "interception of an electronic communication" Representative Fritchey makes it clear that an officer's "intent" does not determine whether or not you have an "electronic communication."

I believe that section 14-2(a) of the eavesdropping statute and sections 108A-1 and 108A-3 of the Code of Criminal Procedure, when coupled with the legislative history, make it clear that the legislature intended for police officers to obtain a court order, even when they consent to the use of eavesdropping devices to record their conversations. 720 ILCS 5/14-2(a) (West 2000); 725 ILCS 5/108A-1, 108A-3 (West 2000). I also believe that section 14-2(a) of the eavesdropping statute and sections 108A-1 and 108A-3 of the Code of Criminal Procedure, when coupled with the legislative history, make it clear that a police officer is not excused from obtaining a court order when using an eavesdropping device because he does not intend for his communications with a criminal suspect to

remain private. 720 ILCS 5/14-2(a) (West 2000);725 ILCS 5/108A-1, 108A-3 (West 2000). The legislature could have provided an affirmative defense or an exemption for law enforcement officers, like Investigator Everett, investigating child solicitation on the Internet, but the legislature elected not to codify an affirmative defense or exemption in the eavesdropping statute for officers using eavesdropping devices to intercept electronic communications.[3] Finally, I believe that section 14-2(a) of the eavesdropping statute and Articles 108A-1 and 108A-3 of the Code of Criminal Procedure when coupled with the legislative history make it clear that a warrantless interception of an electronic communication with an eavesdropping device without a court order violates the eavesdropping statute. 720 ILCS 5/14-2(a) (West 2000); 725 ILCS 5/108A-1, 108A-3 (West 2000).

## The Rules of Statutory Construction

Case law is clear that doubt as to the construction to be given a legislative enactment must be resolved in favor of an interpretation which supports the statute's validity because statutes are construed to avoid an unconstitutional result. In re Application for Judgment & Sale of Delinquent

---

[3] One commentator has concluded that police officers, like Investigator Everett, violate the eavesdropping statute when they pose as unwary 13-year-olds to catch pedophiles who trawl the internet for such victims. H. Gunnarsson, *No Police "Eaveasdropping" on sexual predators - even in cyberspace?*, 92 Ill. B.J. 238 (2004).

No. 1-03-2485

Properties for the Tax Year 1989, 167 Ill. 2d 161, 168 (1995). A statute capable of two interpretations should be given the interpretation that is reasonable and that will not produce absurd, unjust, unreasonable or inconvenient results that the legislature could not have intended. Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund of Chicago, 155 Ill. 2d 103, 110 (1993). An interpretation that renders a statute valid is always presumed to have been intended by the legislature, and a court is obliged to construe a statute to affirm its constitutionality. Collins, 155 Ill. 2d at 110; see also 2A Sutherland and Statutory Construction §45:11 at 70-71 (6th ed. 2000) ("If the law is reasonably open to two constructions, one that renders it unconstitutional and one that does not, the court must adopt the interpretation that upholds the law's constitutionality").

Applying the aforementioned rules of statutory construction, I reach a different result from the majority. The majority's interpretation of the intent language is that there was not an electronic communication in this case because Investigator Everett did not intend for his electronic communications with Gariano to be private. Given the majority's interpretation, there will never be an electronic communication because police officers will always take the position that their instant messages or electronic communications with criminals were not intended to remain private. Without an electronic communication, the police never violate the eavesdropping statute. The majority's construction of the language in the definition for electronic communication destroys harmony with other statutes, like section 108A-1, referenced in the eavesdropping statute and defeats a major purpose of the legislation. Finally, the majority's construction of the eavesdropping statute permits the language, "where the sending and receiving parties intend the electronic communication to be private," in the definition for electronic communication, to make that part of the eavesdropping

statute which addresses electronic communications a nullity, and I do not think that is what the legislature intended.

The Supporting Authorities

The majority relies upon <u>United States v. White,</u> 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122 (1971), a federal case, to support its position. The majority's reliance on <u>White</u> is misplaced because that case did not involve an eavesdropping statute that only authorized the use of an eavesdropping device when (1) all parties consented or (2) there was a court order. In light of the fact this case involves an Illinois eavesdropping statute, I do not think that it is necessary for this court to consider a federal case or the United States Constitution to interpret an Illinois statute. See <u>People v. Youngerman</u>, 342 Ill. App. 3d 518, 528 (2003) (courts should avoid addressing constitutional questions if they are unnecessary to the resolution of the case); see also <u>In re Detention of Traynoff</u>, 338 Ill. App. 3d 949, 957 (2003).

The majority also relies upon <u>People v. Shinkle</u>, 128 Ill. 2d 480 (1989), an Illinois case, to support its position. <u>Shinkle</u> is a case where the Illinois Supreme Court interpreted the eavesdropping statute and construed the term "eavesdropping device" to determine whether an extension telephone is an eavesdropping device. <u>Shinkle</u>, 128 Ill. 2d at 485. The majority's reliance on <u>Shinkle</u> is misplaced because (1) that decision predates the amendment to the eavesdropping statute which took effect in 2000 and added the definition for electronic communications, and (2) that decision involved an oral communication overheard on an extension telephone rather than an instant message. Instant messaging and other forms of electronic communications should not be blindly analogized to oral conversations because they occur in different mediums and <u>Shinkle</u> did

not consider that distinction.[4] Consequently, I think the majority's reliance on <u>Shinkle</u> is misplaced because it predates the amendment to the eavesdropping statute, it involved an oral communication, it did not analyze electronic communications, and it did not consider instant messaging, which was nonexistent technology at the time of that decision.

Conclusion

In conclusion, I would hold that the trial court erred when it denied Gariano's motion to suppress because Investigator Everett was an eavesdropper who violated the eavesdropping statute when he used a Power Tools programmed computer to intercept, retain and transcribe Gariano's instant messages. 720 ILCS 5/14-2(a) (West 2000). I would direct the trial court to suppress Investigator Everett's instant message logs because section 14-5 of the eavesdropping statute

---

[4] "Using the Internet can involve reading web pages, e-mailing, joining online chat rooms, and instant messaging, to give just a few examples. These activities can be classified and compared based on a number of characteristics such as the spontaneity, exclusivity, and interactivity of the communication. *** The genus of electronic communication may not break down so easily into a series of categories that analogize neatly to preexisting communications media." C. Crump, *Data Retention: Privacy, Anonymity, and Accountability Online*, 56 Stan. L. Rev. 191, 206-07 (2003).

provides that any evidence obtained in violation of the eavesdropping statute is not admissible in any civil or criminal proceeding. 720 ILCS 5/14-5 (West 2000). I would also suppress Gariano's statement. Section 108A-9 of the Code of Criminal Procedure permits an aggrieved person, like Gariano, to suppress evidence, herein his statement to ASA Rogala, that was derived from the illegal interception of his instant messages. 725 ILCS 5/108A-9 (West 2000). While I do not think that Illinois law permits the warrantless interception of electronic messages without a court order, I do believe the eavesdropping statute permits police officers to testify about information that was obtained without using an eavesdropping device. Therefore, I would hold that Investigator Everett, as a party to Gariano's instant message communications, is permitted to testify, from memory, about his communications with Gariano because the officer is not prohibited by the eavesdropping statute from testifying about his firsthand knowledge of the contents of the instant messages he exchanged with Gariano. Finally, I think this case should have been reversed and remanded with directions to the trial court for a new trial.